### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION.

## JACKSON, APRIL TERM, 1917.

JOHN DENNIS *v.* THE STATE.

*(Jackson,* April Term, 1917.)

1. **CRIMINAL LAW. Bill of exceptions. Authority of judge.**
   Under Shannon's Code, section 7222, providing relative to criminal cases that defendant is entitled to his bill of exceptions to be taken and signed as in civil cases, and section 4693, providing as to civil cases that, the truth of the case being fairly stated in the bill, the judge shall sign it, a bill should be signed by the judge who presided at the trial, and a bill of exceptions signed by a special judge appointed pending impeachment proceedings against the judge who presided at the trial could not be considered. (*Post, p.* 548.)

   Code cited and construed: Sec. 7222. (S.).

2. **CRIMINAL LAW. Appeal. Review. Presumptions.**
   In the absence of a bill of exceptions, the supreme court will conclusively presume that the evidence justified the verdict. (*Post, pp.* 548, 549.)

   Cases cited and approved: Allen v. State, 8 Tenn., 294; Huddleston v. State, 66 Tenn., 55; Darden v. Williams, 100 Tenn.,

Dennis v. State.

, 415;  Dunn v. State, 127 Tenn., 267;  Berndren v. State, 109 Tenn., 225.

3. CRIMINAL LAW. Appeal. Review, Necessity of bill of exceptions.

In the absence of a properly authenticated bill of exceptions, the admission of evidence cannot be reviewed. (*Post*, p. 549.)

Cases cited and approved:  Walker v. Graham,, 18 Tenn., 231; Dunn v. State,, 127 Tenn., 267.

4. CRIMINAL LAW. Bill of exceptions. Necessity. Review of instructions.

A trial court's charge does not become a part of the record unless made so by a properly authenticated and filed bill of exceptions, and, in the absence of such a bill, a paper purporting to be the charge cannot be considered. (*Post*, *pp.* 550, 551.)

Acts cited and construed:  Acts 1899, ch. 275.

Cases cited and approved:  Railway Co. v. Foster, 88 Tenn., 671; Marble Co. v. Black, 89 Tenn., 118.

5. CRIMINAL LAW. Bill of exceptions. Scope and sufficiency.

Where after a criminal trial and while a motion for rehearing was pending impeachment proceedings were instituted against the presiding judge, and a special judge was appointed, who denied the motion and signed a paper purporting to be a bill of exceptions covering the proceedings in the case from its beginning to and inclusive of the order of authentication, though such paper was not a proper bill of exceptions as to the proceedings at the trial before the regular judge, it might be treated as a bill of exceptions in respect of the proceedings occurring before the special judge on the hearing of the motion for a new trial; the recitals as to the proceedings before the regular judge being regarded as surplusage. (*Post*, *p.* 551.)

Cases cited and approved: Dunn v. State, 127 Tenn., 267.

6. CRIMINAL LAW. Appeal. Reversal.

Where a motion for a new trial was filed on the day verdict was rendered, and was continued from time to time under the orders of the judge, and before a hearing thereon impeachment pro-

Dennis v. State.

ceedings were instituted against the presiding judge, and a special judge appointed who denied the motion, and though the bill of exceptions was not presented, as it might have been, to the trial judge, it was presented in proper time and soon after the denial of the motion for new trial, the conviction would be reversed; as defendant was denied the benefit of having the exceptions reserved during the trial presented to the trial judge and to have that judge pass upon the merits of the exceptions and of the motion for a new trial. (*Post, pp.* 551-553.)

Cases cited and distinguished: Cooper v. State, 123 Tenn., 37; Mahon v. State, 127 Tenn., 535.

7. CRIMINAL LAW. Review. Approval of verdict by trial court.

The denial of a motion for a new trial by a special judge appointed pending impeachment proceedings against the judge who presided at the trial was not an approval of the verdict by the trial judge within the rule as to the conclusiveness of a verdict so approved. (*Post, pp.* 554, 555.)

Cases cited and approved: Crittenden v. Schermerhorn, 35 Mich., 370; Newton v. Boodle, 3 C. B., 795; Bennett v. Peninsular, etc., Steamboat Co., 16 C. B., 29; Hume v. Bowie, 148 U. S., 245; People v. Judge, 40 Mich., 630; People v. Judge, 41 Mich., 726; Isler v. Haddock, 72 N. C., 119; Mason v. Osgood, 72 N. C., 120; Shelton v. Shelton, 91 N. C., 329; Sanders v. Norris, 82 N. C., 243; Henrichsen v. Smith, 29 Or., 475; State v. Parks, 109 N. C., 813; Taylor v. Simmons, 116 N. C., 70; Borrowscale v. Bosworth, 98 Mass., 34; Fire Ass'n of Philadelphia v. McNerney, 54 S. W., 1053; Nelson v. Marshall, 77 Vt., 44; Trammell v. State, 1 Tex., App. 121. Preston v. State, 15 Tex., App. 336; Baub v. State, 8 Tex. App., 173; Henderson v. State, 20 Tex. App., 394; State v. Reed, 67 Mo., 36; Gaiter v. State, 45 Miss., 441; State v. Bess, 31 La. Ann., 191; Southall v. Evans, 114 Va., 461.

Cases cited and distinguished: Richardson v. State, 15 Wyo., 465.

137 Tenn.—35

FROM  SHELBY

Error to Criminal Court of Shelby County.—JESSE EDGINGTON and D. B. PURYEAR, Judges.

CLARENCE FRIEDMAN and E. D. ROSENSTEIN, for plaintiff in error.

W. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

Under an indictment charging him with the murder of Julia Gentry, and under his plea of not guilty, John Dennis was put on trial on February 14, 1916, and two days later the jury returned its verdict, finding him guilty of manslaughter. On the same day his motion for a new trial was filed.

When the various steps above stated were taken, Judge Edgington was the regular judge of the court, and presided at the trial of the cause and during the above proceedings. Under the orders of this judge the hearing of the motion for a new trial was continued from time to time. It was set for hearing on as many as five different days during the months of February and March, 1916, but Judge Edgington never disposed

of or passed on the merits of the motion.  Prior to or during the time the above steps were being taken an impeachment proceeding was set on foot against Judge Edgington, the General Assembly being then in session, and thus was brought about the appointment of special judges to hold the criminal court of Shelby county, under whose orders the motion for a new trial was kept open and undisposed of on the docket of the court, during the entire term at which that motion was filed.  Just before the end of the term an order went down on the minutes extending the term of the court for thirty days ''so as to enable the court to hear and consider defendant's motion for a new trial and any other motion that may be filed and to enable defendant to prepare and file his bill of exceptions.''  This order was made under the direction of Judge Puryear, who had been theretofore appointed by the Governor to preside over the court during the absence of the regular judge.

After the entry of the order last mentioned, and during the early part of the term next succeeding that at which the motion for a new trial was made, Judge Puryear heard and overruled said motion; whereupon plaintiff in error moved in arrest of judgment, but Judge Puryear also overruled this motion, and sentenced plaintiff in error to serve a term of from two to ten years in the penitentiary, from which judgment an appeal has been prosecuted to this court.

It appears that the impeachment proceedings against Judge Edgington finally resulted in his removal from

office, but it was in progress when the judgment appealed from was rendered.

Plaintiff in error made objection to the disposition by Judge Puryear of the motion for a new trial when the same was called for final hearing. His objection was based on the ground, in substance, that Judge Puryear had not presided at the trial of the cause, and had no knowledge of what the evidence was, and was therefore not qualified or competent to pass on the merits of the motion for a new trial, and to determine the truth of the bill of exceptions; wherefore it was urged that final action on the motion be deferred until the termination of the impeachment proceedings against Judge Edgington; but the court overruled this objection, to which action of the court defendant then and there duly excepted.

The first, second and third assignments of error go to the sufficiency of the evidence to sustain the verdict, but we cannot notice them, because that portion of the transcript purporting to be the bill of exceptions is not authenticated by Judge Edgington, who is shown by the technical record to have presided at the trial.

In respect of bills of exception our statute (section 7222, Shannon's Code, and the same section in Shannon's Code annotated by Thompson) provides that a defendant is entitled to his bill of exceptions of any matters of law or facts, to be taken and signed as in civil cases, and our statute in respect of bills of exception in civil cases is section 4693 of each of said Code above mentioned, and is as follows:

Dennis v. State.

"The truth of the case being fairly stated in the bill of exceptions, the judge shall sign the name, which thereupon becomes a part of the record of the cause."

Manifestly it was contemplated that the judge who presided at the trial should sign the bill of exceptions, as only he can know when the truth of the case is fairly stated in that document, and hence the rule is well settled by our cases that his signature is the only sufficient authentication of a bill of exceptions. See *Allen* v. *State,* 8 Tenn. (Mart. & Y.) 294; *Huddleston* v. *State,* 66 Tenn. (7 Baxt.) 55; *Darden* v. *Williams,* 100 Tenn. (16 Pick.), 415, 45 S. W., 669. It is also well settled that, in the absence of a bill of exceptions, this court will conclusively presume, on review of the judgment, that the evidence justified the verdict of the jury. *Dunn* v. *State,* 127 Tenn. (19 Cates), 267, 154 S. W., 969; *Bundren* v. *State,* 109 Tenn. (1 Cates), 225, 70 S. W., 368.

The fourth assignment of error complains of the action of the trial court in admitting evidence offered as a dying declaration, but for the same reason above indicated we cannot pass on the merits of this assignment. The action of the trial judge in admitting evidence can only be brought in question by a bill of exceptions, and, as there is no properly authenticated bill of exceptions touching the action of the trial judge in admitting the evidence complained of, we cannot consider the propriety of his action. *Walker* v. *Graham,* 18 Tenn. (10 Yerg.), 231; *Dunn* v. *State,* 127 Tenn. (19 Cates), 267, 154 S. W., 969.

The fifth, sixth, and seventh assignments complain of the charge of the trial judge, but it is well settled that the charge of a trial court does not become a part of the record unless made so by a properly authenticated and filed bill of exceptions, and, as we have seen that document is lacking in this transcript in respect of the entire proceedings had before Judge Edgington, it is manifest that we cannot look to the paper purporting to be his charge to the jury. *Huddleston* v. *State, supra; Railway Co.* v. *Foster,* 88 Tenn. (4 Pick.), 671, 13 S. W., 694, 14 S. W., 428, and cases cited; *Marble Co.* v. *Black,* 89 Tenn. (5 Pick.), 118, 14 S. W., 479.

The eighth and final assignment of error is as follows:

"The court, Judge Puryear, erred in passing upon the motion of the defendant for a new trial, not being the trial judge, and not being in a position to intelligently pass upon the same."

After having overruled the motion for a new trial, Judge Puryear signed the paper already mentioned appearing in the transcript and purporting to be a bill of exceptions, covering the proceedings had in this cause from its beginning to and inclusive of the order of authentication purporting to embrace all of the proceedings in the cause; and this document was filed herein as a bill of exceptions. The overruling of the motion for a new trial and the signing and filing of said document were all well within the extension of time allowed by the court during the term at which the

verdict was rendered. So that, under the facts, the proceedings before Judge Puryear fall fully within the letter and purpose of chapter 275, Acts of 1899, in respect of the extension of the trial term into the next succeeding term, for the purposes therein set out.

We have held that as to the proceedings before Judge Edgington there is no bill of exceptions to which we can look, but we are of the opinion that, in view of the objection to the competency of Judge Puryear, advantage of which appellant can only have by filing a bill of exceptions, we may treat the document signed by Judge Puryear as a bill of exceptions filed by appellant in respect of the proceedings which occurred while Judge Puryear was presiding on the hearing of the motion for a new trial, and touching the objection made by appellant to his competency. This, we think, may be done under the authority of the opinion on the petition to rehear in *Dunn* v. *State,* 127 Tenn. (19 Cates), 267, 154 S. W., 969. The recitals of the document touching the proceedings before Judge Edgington are regarded as surplusage, and those in respect of the proceedings before Judge Puryear as a bill of exceptions.

We think the eighth assignment of error must be sustained. It is clear that through no fault of plaintiff in error he has been denied rights to which he was entitled under our Constitution and statutes. He was entitled to the benefit of having the exceptions he reserved during the trial presented to and acted upon by the judge who presided at the trial and saw and

heard all that there occurred, and he was entitled to have that judge pass upon the merits of those exceptions and upon the merits of his motion for a new trial. These important rights he has been deprived of, not by his own fault, but by the fault of the judge whose duty it was to see that these rights be accorded him. It was the duty, and within the power of Judge Edgington to have acted finally on the motion for a new trial, and to have signed the bill of exceptions long before the last order was made by him continuing the final hearing of the motion. More than a month of time elapsed between the filing of the motion and the last order aforesaid. In the argument at the bar it was suggested that the prisoner, by greater diligence, might have secured from the trial judge a prompt disposition of the motion, but we fail to see how he could have done so. The motion for a new trial was, as stated, filed on the very day of the verdict. It was kept alive on the minutes of the court for nearly three months of the term at which it was made, and further into the succeeding term, and until overruled by Judge Puryear, and as to the bill of exceptions, while it was not presented for signature before the final action on the motion for a new trial, as it might have been (see *Dunn* v. *State, supra*), yet the wisdom of a different course than that which was pursued is not apparent; and at all events the bill of exceptions was presented in full time to save every right of the prisoner, if the trial judge had been in the discharge of his duty, when the bill was ready for his signature.

Dennis v. State.

The bill of exceptions was presented to Judge Puryear about seven days after his final action on the motion for a new trial, and if the trial judge had ruled finally on the motion for a new trial on the day it was filed, there is nothing in this transcript to suggest that a less prompt action would have followed on behalf of the prisoner in respect of presenting the bill of exceptions for his signature. The technical record shows the default of the trial judge in the discharge of his duties. The bill of exceptions, the technical record, and our decided cases show the effect of that default upon the rights of the prisoner.

"A verdict of guilty approved by the trial judge will not be disturbed upon the facts by this court, unless upon an examination of the whole record there is found to be a clear preponderance of evidence in favor of the innocence of the plaintiffs in error." *Cooper* v. *State,* 123 Tenn. (15 Cates), 37, 138 S. W., 826.

And as said in another case:

"In this court the burden is upon the plaintiff in error to show his innocence by a preponderance of the evidence. By the verdict of the jury, approved by the trial judge, the presumption of his innocence has been removed and converted into an adjudication of his guilt. Therefore the inquiry here is not whether he is guilty, and the investigation of the record is not made with that in view. But the question is: 'Is he innocent? And the record is investigated upon an assumption of his guilt." *Mahon* v. *State,* 127 Tenn. (19 Cates), 535, 156 S. W., 458.

Plaintiff in error in the present case stands convicted by the verdict of a jury, but where do we find the approval of the trial judge, within the meaning of the authorities above cited? Judge Puryear's action on the motion for a new trial is not an approval of the verdict of the jury within the meaning of those cases. Such an approval as they refer to is an approval based on the same opportunities which the trial jury had to reach a correct conclusion as to the truth of the case. In *Richardson* v. *State,* 15 Wyo., 465, 89 Pac., 1027, 12 Ann. Cas., 1048, it is said:

"It seems to be well established as a general rule that, where a party has lost the benefit of his exceptions from causes beyond his control, a new trial is properly awarded. That rule has been recognized and applied more frequently perhaps in cases where the loss of the exceptions has occurred through death or illness of the judge, whereby the perfection of a bill of exceptions has been prevented. But a reference to the cases will show that various other circumstances have been held sufficient to authorize the application of the rule in order to prevent the miscarriage of justice or the deprivation of the legal right of appeal. *Crittenden* v. *Schermerhorn,* 35 Mich., 370; *Newton* v. *Boodle,* 3 C. B., 795, 54 E. C. L., 795; *Bennett* v. *Peninsular, etc., Steamboat Co.,* 16 C. B., 29, 81 E. C. L., 29; *Hume* v. *Bowie,* 148 U. S., 245, 13 Sup. Ct., 582 [37 L. Ed., 438]; *People* v. *Judge,* 40 Mich., 630; *People* v. *Judge,* 41 Mich., 726, 49 N. W., 925; *Isler* v. *Haddock,* 72 N. C., 119; *Mason* v. *Osgood,* 72 N. C., 120; *Shelton*

v. *Shelton,* 91 N. C., 329; *Sanders* v. *Norris,* 82 N. C., 243; *Henrichson* v. *Smith,* 29 Or., 475 [42 Pac., 486] 44 Pac., 496; *State* v. *Parks,* 109 N. C., 813, 13 S. E., 939; *Taylor* v. *Simmons,* 116 N. C., 70, 20 S. E., 961; *Borrowscale* v. *Bosworth,* 98 Mass., 34; *Fire Ass'n of Philadelphia* v. *McNerney* (Tex. Civ. App., 1900) 54 S. W., 1053; *Nelson* v. *Marshall,* 77 Vt., 44, 58 Atl., 793; *Trammell* v. *State,* 1 Tex. App., 121; *Ruston* v. *State,* 15 Tex. App., 336; *Babb* v. *State,* 8 Tex. App., 173; *Henderson* v. *State,* 20 Tex. App., 304; *State* v. *Reed,* 67 Mo., 36; *Gaiter* v. *State.* 45 Miss., 441; *State* v. *Bess,* 31 La. Ann., 191.''

A later collation of the authorities found in the opinion and its accompanying note in *Southall* v. *Evans,* 114 Va., 461, 76 S. E., 929, 43 L. R. A. (N. S.), 468, Ann. Cas., 1914B, 1229, indicates great conflict in the authorities. It appears that in many of the cases where the conclusion reached is contra to that in *Richardson* v. *State, supra,* the decisions turn on statutes peculiar to the particular jurisdiction. At all events, regardless of the conflict in general authority, we are unable to see our way to any other result in the present case than to reverse the judgment and remand the cause for a new trial.